UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IHOP FRANCHISING, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SULTAN HAMEED,<br><br>Defendant. | No. 2:14-cv-1752-TLN-CKD<br><br><br><br>**ORDER** |

This matter is before the Court pursuant to Plaintiffs IHOP Franchising, LLC, IHOP Properties, LLC, IHOP IP, LLC, and International House of Pancakes, LLC's (collectively hereinafter referred to as "Plaintiffs" or "IHOP") Motion for Preliminary Injunction. (ECF No. 9.) Defendant Sultan Hameed ("Defendant") opposes Plaintiffs' motion, (Def's Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 15), and Plaintiffs have filed a reply (Pls.' Reply in Supp. of Mot. for Prelim. Inj., ECF No. 16). The Court has carefully considered the arguments presented by both parties. For the reasons stated below, Plaintiffs' Motion for Preliminary Injunction (ECF No. 9) is hereby GRANTED.

**I.    FACTUAL BACKGROUND**

IHOP is a franchisor of nationally recognized restaurants, serving pancakes and other breakfast items, as well as lunch and dinner items. On or about July 8, 1998, International House of Pancakes, Inc. (a predecessor-in-interest to Plaintiff IHOP Franchising) entered into a franchise

1  agreement ("the Franchise Agreement") with Defendant, which granted Defendant the right to
2  operate an IHOP® restaurant located at 3800 Northgate Boulevard, Sacramento, California
3  95834, also known as IHOP # 1717 (the "Restaurant") on the terms set forth in the agreement.
4  (Compl., ECF No. 1 at ¶ 15; Franchise Agreement (Ex. A), ECF No. 1-1.)  By a letter agreement
5  dated on or about August 31, 1998, the parties amended the Franchise Agreement.  (ECF No. 1 at
6  ¶ 16; IHOP Corp. Letter (Ex . B), ECF No. 1-2.)  The Franchise Agreement allowed Defendant to
7  operate an IHOP® restaurant using Plaintiffs' trademarks[1] and system.  (ECF No. 1 at ¶ 17.)  The
8  Franchise Agreement had a 25-year term, commencing in 1998 and expiring in 2023, unless
9  terminated earlier.  (ECF No. 1 at ¶ 17.)  In the Franchise Agreement, Defendant agreed to pay
10 royalties and advertising fees.  (ECF No. 1 at ¶ 18; ECF No. 1-1 at ¶¶ 6.01, 6.02, 6.01, 7.02.)  The
11 Franchise Agreement permitted Plaintiffs to terminate the Franchise Agreement after providing
12 notice of default and following Defendant's failure to cure such default within seven (7) days.
13 (ECF No. 1 at ¶ 19; ECF No. 1-1 at ¶ 12.01.)  Defendant agreed that, upon termination of the
14 Franchise Agreement, he would, among other things, discontinue use of the Marks and would not
15 operate or do business under any name or in any manner that might give the impression to the
16 general public that he was operating an authorized IHOP® restaurant.  (ECF No. 1 at ¶ 19, ECF
17 No. 1-1 at ¶¶ 8.09, 16.02.)
18      The parties also entered into a sublease agreement for the rental of the Restaurant
19 premises.  (ECF No. 1 at ¶ 11, Sublease (Ex. C), ECF No. 1-3.)  By the letter agreement dated on
20 or about August 31, 1998, the parties amended the sublease.  (ECF No. 1 at ¶¶ 7, 11, ECF No. 1-
21 2.)  In the amended sublease (collectively, the "Sublease"), Defendant agreed to pay IHOP rent.
22 (ECF No. 1 at ¶¶ 11, 12, ECF No. 1-3 at ¶ 2.1.)  The Sublease provided for termination of the
23 Sublease in the event of termination of the Franchise Agreement.  (ECF No. 1 at ¶¶ 11–12; ECF
24 No. 1-3 at ¶ 1.3.)  The Sublease also provided that upon Defendant's breach of the Franchise

---

[1] Plaintiffs have alleged ownership and registration of the following trademark registration numbers ("Marks"): 2,332,311; 2,654,144; 2,846,136; 2,942,609; 3,003,423; 3,408,102; 3,429,404; 3,429,405; 3,429,406; 3,429,408; 3,433,996; 3,433,997; 3,507,059; 3,514,724; 3,526,262; 3,526,263; 3,603,073; 3,616,420; 3,616,421; 3,705,677; 3,731,730; 3,743,560; 3,771,927; 3,822,209; 3,923,246; 3,985,927; 4,015,959; 4,025,593; 4,026,923; 4,036,165; 4,036,166; 4,036,294; 4,050,866; 4,094,780; 4,111,120; 4,151,113; 4,168,136; 4,226,503; 4,226,504; 4,281,615; 4,281,618; 4,393,443; 4,407,990; 4,407,992.  (*See* ECF No. 1 at ¶ 12.)  Defendant does not dispute Plaintiffs' interest in these Marks.

Agreement or Sublease, IHOP could, among other things, terminate the Sublease and obtain possession of the Restaurant premises. (ECF No. 1 at ¶ 11, ECF No. 1-3 at ¶ 8.1.) Upon termination of the Sublease, Defendant was required to "promptly return the Premises to Sublandlord in as good condition as when received, reasonable wear and tear excepted." (ECF No. 1 at ¶ 11; ECF No. 1-3 at ¶ 3.1.)

Plaintiffs assert that among other things, Defendant failed to pay royalty and advertising fees for the following weeks ending on: May 4, 2014; May 11, 2014; May 18, 2014; May 25; 2014; June 1, 2014; June 8, 2014; June 15, 2014; June 22, 2014; and June 29, 2014. (ECF No. 1 at ¶ 28.) On June 13, 2014, IHOP sent Defendant, via certified mail and Federal Express, a notice of default (the "Notice of Default") demanding that Defendant pay money owed under the Franchise Documents. (ECF No. 1 at ¶ 29; Notice of Default (Ex. D), ECF No. 1-4.) Defendant did not tender the amount owed demanded by Plaintiffs. (ECF No. 1 at ¶ 29.) Plaintiffs subsequently sent Defendant a notice of termination on June 26, 2014. (ECF No. 1 at ¶ 29; Notice of Termination (Ex. E), ECF No. 1-5.)

Since the termination of the Franchise Documents, Defendant has failed and refused to surrender possession of the Restaurant's premises to Plaintiffs. (ECF No. 1 at ¶ 37.) Defendant continues to run the restaurant employing Plaintiffs' Marks without license or Plaintiffs' consent. Plaintiffs filed a complaint on July 24, 2014, alleging the following five causes of actions: (1) breach of contract; (2) ejectment; (3) trademark infringement; (4) unfair competition under the Lanham Act; and (5) unfair competition and false advertising. (ECF No. 1.) On August 4, 2014, Plaintiffs filed their motion for preliminary injunction. (ECF No. 9.)

## II.   STANDARDS OF LAW

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal.

3

App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted). However, preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits ... so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35.

### III.  ANALYSIS

Plaintiffs assert that they are entitled to a preliminary injunction enjoining Defendant from continuing to use the Marks because they meet the four criteria for injunctive relief: (1) they are likely to succeed on the merits of its trademark infringement and unfair competition claims due to Defendant's refusal to cease use of the Marks, in contravention of the Franchise Documents; (2) in the absence of a preliminary injunction, Plaintiffs will suffer irreparable harm because Defendant's continued use of the Marks diminishes IHOP's established goodwill and Marks; (3) the balance of equities favors granting injunctive relief because Plaintiffs merely ask for the provisions of the Franchise Documents to be enforced; and (4) an injunction is in the public interest because it would prevent public confusion and support the enforcement of binding

4

agreements. (ECF No. 9 at 14.)

Defendant does not dispute that Plaintiffs meet the first, third and fourth criteria, but asserts that Plaintiffs have failed to show a likelihood that they will suffer irreparable harm absent an injunction, as required under the second factor. (*See* ECF No. 15 at 2.) The Court addresses each factor separately below.

A.   Likelihood of Success

To establish a likelihood of success on the merits of Plaintiffs' trademark infringement claim, Plaintiffs must show that it is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam).[2] Here, Plaintiffs have shown that they are the owner of numerous marks associated with the IHOP brand and that Defendant was authorized to use such marks under the Franchise Agreement and Sublease Agreement executed between the parties. Defendant failed to pay certain fees to Plaintiffs in contravention of the Franchise Agreement. (*See* Ex. A, ECF No. 1-1 at ¶¶ 6.01, 6.02, 7.01.) The Franchise Agreement allows the Franchisor to terminate the agreement prior to its expiration after providing written notice of Franchisee's Material Breach of the Agreement to Franchisee, if the Material Breach shall not be cured within 7 days. (*See* ECF No. 1-1 at ¶ 12.01.) The Agreement requires that once terminated, the Franchisee "shall deliver and surrender up to Franchisor or its Affiliate each any and all manuals, Bulletins, instruction sheets, forms, marks, devices, Trademarks, and the possession of any physical objects bearing or containing any of said Trademarks, and shall not thereafter use any of the same or any such Trademarks or Trade Secrets." (ECF No. 1-1 at ¶ 8.09.) Section 16.02 states:

> In the event of the termination or expiration of this Agreement for whatever reason, Franchisee shall forthwith discontinue the use of

---

[2] The Ninth Circuit has established eight non-exhaustive factors that are relevant to a likelihood-of-confusion determination: (1) the strength of the alleged owner's trademark; (2) proximity of the goods or services; (3) similarity of the trademarks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods or services and the degree of care likely to be used by the purchaser; (7) alleged infringer's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). Because in this instance there is no dispute that the Marks at issue are strong marks that are associated with Plaintiffs' business and that Defendant used the marks as a franchisee, the Court finds it unnecessary to engage in a likelihood-of-confusion analysis under the *Sleekcraft* factors.

5

>Franchisor's Trademarks and shall not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression that it is either directly or indirectly associated, affiliated, franchised or licensed by or related to, the IHOP Restaurant system, and shall not, either directly or indirectly, use any name, logotype, symbol or format confusingly similar to the IHOP Trademarks or formats, at either the Franchised Location[,] the Franchised Restaurant or any other location not then franchised to Franchisee by Franchisor.

(ECF No. 1-1 at ¶ 16.02.) It is undisputed that Plaintiffs terminated the Franchise Agreement on June 26, 2014, due to Defendant's failure to pay certain fees. (ECF No. 1 at ¶ 29; ECF No. 1-5.) Thus, Defendant was required to stop using Plaintiffs' trademarks. Defendant has failed to do so. He is not using a similar mark, but the same mark. There is no question that patrons of Defendant's restaurant think that they are dining at an IHOP. The restaurant is still using Plaintiffs' logos and their menu. Thus, Plaintiff has shown a likelihood of success on the merits on its trademark infringement claim.

### B.   Likelihood of Irreparable Harm

Defendant's main contention contained in his opposition is that Plaintiffs cannot show a likelihood of irreparable harm. (ECF No. 15 at 2.) Defendant asserts that Plaintiffs' motion relies on a presumption that Plaintiffs' reputation and its Marks's goodwill will be harmed.

Defendant is correct that to warrant equitable relief in a trademark infringement claim within the Ninth Circuit, a plaintiff must proffer evidence sufficient to establish a likelihood of irreparable harm. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014). The Ninth Circuit has recently clarified that plaintiffs are not owed a presumption of irreparable harm once they have shown a likelihood of success on the merits. *Id.* at 1250 ("Gone are the days when once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.") (internal quotations omitted). Furthermore, the Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975); *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *Beacon Theaters,*

*Inc. v. Westover*, 359 U.S. 500, 506–507 (1959); *Hecht Co. v. Bowles*, 64 S. Ct. 587, 591 (1944)). Thus, if a plaintiff shows that the other three factors weigh in favor of granting injunctive relief, but fails to show a likelihood of irreparable harm, other legal remedies are considered adequate and an injunction will not issue. *Herb Reed Enterprises, LLC*, 736 F.3d at 1249–51.

In Plaintiffs' reply, they have presented evidence of their loss of control over their Marks as it pertains to Defendant's establishment, and hence their loss to their business reputation. Plaintiffs assert that they will sustain damage to their goodwill if the preliminary injunction is not granted. *See id.* at 1250 ("[e]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm.") Plaintiffs have filed sworn declarations in which they allege the following examples of irreparable harm to their company's reputation caused by Defendant's continued use of their Marks:

> To ensure guest satisfaction and proper operation of IHOP restaurants, IHOP has developed an "AB rating system" to evaluate the performance of each of its franchisees. Included in the evaluation process is an Operation Evaluation ("OE") and an Operations Assessment Report ("OAR").
>
> During the AB rating process for the January through June 2014 period, IHOP determined that Mr. Hameed's Restaurant committed multiple operational violations, and the Restaurant received an operational rating of "F." To put this rating in perspective, in IHOP's West Division, only 3% of all IHOP restaurants received an "F" rating during this same time period, while 89% of IHOP restaurants received a rating of "A" or "B".
>
> With regard to the "OE" portion of the AB rating, the Restaurant scored a 76.99% in May 2014, a failing score. . . . This OE identifies deficiencies that damage the IHOP brand, as customers are likely to associate the deficiencies of Mr. Hameed's Restaurant with the IHOP brand. For example, the May 1, 2014 OE report identifies graffiti on the walls in the men's bathroom, dirty urinals, fecal matter on a changing table, dirty floors, and dirty fixtures.
>
> With regard to the "OAR" portion of the AB rating, the Restaurant scored 65% during the first half of 2014, well below a passing score of 75%. . . . The March 3, 2014 OAR report identifies deficiencies that damage the IHOP brand. For example, the March 3, 2014 OAR report shows that milk and sour cream were both stored above 41 degrees, a potential health hazard for customers. The March 3, 2014 OAR report also shows that the chlorine sanitizer solution was not a proper concentration, again a potential health hazard for customers.

(Mendelsohn Decl., ECF No. 16-1 at ¶¶ 6–9.) Plaintiffs have provided a copy of the OE and

OAR sections of the AB report.  (*See* Operational Evaluation, Ex. G, ECF No. 16-2, OAR Evaluation, ECF No. 16-2.)  As previously discussed, patrons of Defendant's establishment undoubtedly believe they are patronizing an IHOP franchise.  Thus, allowing a deficient operator to operate under Plaintiffs' Marks — despite termination — irreparably harms IHOP by removing its ability to control its reputation.  Plaintiffs have no adequate remedy at law for injuries to their business's reputation caused by Defendant's continuing infringement.  Based on the foregoing, Plaintiffs have pleaded sufficient facts to show a likelihood of irreparable harm absent injunctive relief.  As such, the Court finds that this factor weighs in favor of granting Plaintiffs' motion.

### C. Balance of Equities

Defendant argues that if this Court were to grant Plaintiffs' motion, he would be precluded from making a living and paying his bills. (ECF No. 15 at 2.)  Essentially, Defendant argues that the crux of this case is whether he rightfully withheld funds from Plaintiffs.  Defendant disputes that he is in breach of the Franchise Agreement because of the predicate actions of IHOP and IHOP's own multiple breaches of the Franchise Agreement.  (ECF No. 15 at 2.)  Defendant requests that this Court allow the present suit to proceed to a determination on the merits.  (ECF No. 15 at 2.)

The Court is not unsympathetic to Defendant's assertions, but finds that any hardship that is claimed by Defendant was self-inflicted, and thus, may be discounted.  *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3rd. Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."); *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("[o]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived.")  This matter is not before the Court pursuant to a complaint by Defendant involving alleged breaches of the contract that Defendant asserts occurred.  Instead, Defendant is before this Court because of a failure to pay franchise and advertising fees and numerous other allegations that resulted in a revocation of Defendant's right to use the Marks at issue.  Therefore, this Court is not persuaded that the balance of equities lies in Defendant's favor.  In reality, the balance of equities favors an

injunction against the Defendant. *See Century 21 Real Estate LLC v. All Professional Realty, INC.*, Nos. 2:10-cv-2751 and 2:10-cv-2846, 2011 WL 221651 at *11–13 (E.D. Cal. Jan. 24, 2011) (finding that the balance of hardships tipped in favor of franchisor and against allowing franchisee to use franchisor's marks, due to risk of irreparable harm in connection with use of franchisor's trademark).

### D. Public Interest

There is a "strong public interest in preventing consumer confusion and fraud favors issuance of the requested injunctive relief. A franchisee who once possessed authorization to use the trademarks of its franchisor becomes associated in the public's mind with the trademark holder." *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996) (citing *Church of Sceintology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986)); *see also Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993–94 (9th Cir. 2009) (the public interest concern in franchise cases is "avoiding confusion to consumers"); *Century 21 Real Estate*, No. 2011 WL 221651, *13 (E.D. Cal. Mar. 17, 2009) ("In the trademark context, the public interest is usually the right of the public not to be deceived or confused."). When a party loses its authorization and continues to use the mark, the unauthorized use confuses and defrauds the public. *Paisa, Inc.*, 928 F. Supp. at 1013. "In cases involving terminated franchisees, the potential for consumer confusion is even greater than in cases of random infringement." *Id.* (citing *Church of Sceintology Int'l*, 794 F.2d at 44). In addition, a party's unauthorized use threatens harm to authorized franchisees who are fulfilling their contractual obligations. *Id.*

Here, Defendant has lost the right to use Plaintiffs' Marks but is still continuing to do so. Thus, Plaintiff is misleading the public, and this factor weighs in favor of granting Plaintiffs' motion for injunctive relief.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs have established [1] that they are likely to succeed on the merits, [2] that they are likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in their favor, and [4] that an injunction is

1 in the public interest. *See Winter*, 555 U.S. at 20.   Therefore, Plaintiff's Motion for Preliminary
2 Injunction (ECF No. 9) is hereby GRANTED.
3    IT IS SO ORDERED.

5 Dated:  January 30, 2015

Troy L. Nunley
United States District Judge